UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MATTHEW GRAY,

Plaintiff,

v.

JOSEPH E. AOUN, JAMES BEAN,
RONALD STARR, GREGORY
GOODALE, SCOTT EDMISTON,
BRUCE RONKIN, FIONA GERMAINE,
CHRISTOPHER FRANSON,
ELIZABETH HUDSON, MARK
NARDONE, WENDY LYNCH, REGINA
COPPA, INDIVIDUALLY AND ON
BEHALF OF NORTHEASTERN
UNIVERSITY, NORTHEASTERN
UNIVERSITY, AND JOHN DOES 1-5,

Defendants.

Civil Action No. 1:18-cv-11825-IT

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT AND JURY CLAIM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), all named Defendants

("Defendants") move to dismiss the claims asserted against them in Plaintiff Matthew

Gray's ("Plaintiff" or "Gray") First Amended Complaint and Jury Claim ("Amended

Complaint").  The Amended Complaint sets forth four causes of action under 42 U.S.C.

§ 1983 ("§ 1983") for alleged Fourteenth Amendment procedural due process violations.

Those causes of action are based on theories of wrongful termination (Count I), malicious

prosecution (Count II), reputational harm (Count III), and conspiracy (Count IV).  The

Amended Complaint also includes a state law claim for breach of contract based upon the

terms of a letter offering Plaintiff a probationary faculty position at Northeastern University (Count V).

Plaintiff's § 1983 claims against Northeastern University, a private higher educational institution, and those Defendants who are corporate officers and administrators of Northeastern fail because a cause of action under § 1983 requires that a state actor, not a private party, act to deprive one of constitutionally protected rights.  In addition, Plaintiff's § 1983 claims against all of the Defendants, including two Northeastern University police officers, based on theories of malicious prosecution and reputational harm, fail to allege the deprivation of a federally secured right.  Plaintiff's remaining § 1983 conspiracy claim also fails because (1) such a claim requires an underlying constitutional violation, and (2) the Amended Complaint does not allege the existence of any agreement between any of the Defendants to deprive Plaintiff of a constitutional right.  Finally, absent a viable federal cause of action, the Court should dismiss Plaintiff's remaining state law claim over which there exists only pendant jurisdiction.

In sum, for the reasons explained below, the Court should dismiss all claims against all Defendants in this action.[1]

---

[1]      The Amended Complaint asserts claims against Northeastern University as well as thirteen named individuals, all of whom are current or former officers or employees of Northeastern and two of whom are Northeastern police officers.  The Amended Complaint also asserts claims against five unidentified individuals.  These John Doe claims should likewise be dismissed because the Amended Complaint does not sufficiently allege that any unidentified individual violated Plaintiff's procedural due process rights under the Fourteenth Amendment.  *See Vasquez v. City of New York*, 2015 WL 774688 (S.D.N.Y. Feb. 17, 2015) ("It is well-settled that a district court may *sua sponte* dismiss claims against non-moving defendants for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard.") (quotation marks and citation omitted).

I. **Statement of Alleged Facts**

Plaintiff Matthew Gray alleges the following relevant facts in the Amended Complaint.[2]

In April of 2011, Northeastern University ("Northeastern"), a private not-for-profit university located in Boston,[3] offered Gray an appointment as Assistant Professor in the Department of Theatre in the College of Arts, Media and Design ("CAMD"), which he accepted.  Am. Compl. ¶¶ 24, 25, Ex. 1.  The terms of his employment with Northeastern were set forth in an offer letter, dated April 29, 2011 (the "Offer Letter"). *Id.* Ex. 1.  The Offer Letter provided that Gray "w[ould] be eligible to receive annual re-appointments in [his] probationary faculty position," and that "[e]ach year's re-appointment . . . is contingent upon several factors at the discretion of the University." *Id.*  As explained in the Offer Letter, factors that may be considered in the school's reappointment decision include performance evaluation, University need, and satisfactory progress towards tenure.  *Id.*

On July 10, 2015, Defendant Ronald Starr ("Starr"), Director of the Media Studio at Northeastern, emailed Gray asking him if he had borrowed "one of the Mac Pros from Room 205."  *Id.* ¶¶ 11, 46.  Gray responded "not me… I haven't been in that room since last semester."  *Id.*

---

[2]     For purposes of this motion, but without admission, Defendants accept as true all well-pleaded factual allegations in the Amended Complaint.

[3]     *See Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 139 (1st Cir. 2002) ("Northeastern University (Northeastern) is a private not-for-profit university located in Boston, Massachusetts.").

On August 24, 2015, Defendant Regina Coppa ("Detective Coppa"), a
Northeastern police detective, contacted Gray and asked to speak with him about an
investigation. *Id.* ¶¶ 20, 49. The following day, August 25, 2015, Gray met with
Detective Coppa and another Northeastern police detective, Defendant Wendy Lynch
("Detective Lynch"). *Id.* ¶ 50. At this meeting, Detectives Coppa and Lynch gave Gray
a *Miranda* warning and then questioned him about the missing computer. *Id.* Gray
stated that he was unaware of the theft of any computers on campus and denied taking the
missing computer. *Id.* at ¶¶ 51-52. Detective Coppa told Gray that she would be filing
an application for a criminal complaint against him for larceny. *Id.* at ¶ 52.

Also on August 25, 2015, Detective Coppa notified Starr of Gray's denial and her
intent to file an application for a criminal complaint in Roxbury District Court. *Id.* ¶ 53.
Starr told Detective Coppa that he would remove Gray's access to Northeastern resources
and forward information about the matter to Northeastern for possible disciplinary action.
*Id.* ¶ 54. Defendant Gregory Goodale ("Goodale")[4], then Associate Dean of Faculty in
CAMD, instructed Gray to surrender his keys, which he did. *Id.* ¶ 12, 55.

The next day, August 26, 2015, Gray's Northeastern e-mail and log-in password
were shut off. On August 27, 2015, Gray met with Goodale and Defendant Fiona
Germaine ("Germaine"), who was a Human Resources management representative at
Northeastern. *Id.* ¶¶ 15, 58. At this meeting, Goodale handed Gray a letter of
suspension, which stated that Gray was being placed on paid administrative leave

---

[4]     Plaintiff misspells the name of Defendant Goodale in the Amended Complaint.

pending the investigation into the missing computer. *Id.* ¶ 58, Ex. 2.  Goodale told Gray that he and Defendant Elizabeth Hudson ("Hudson"), Dean of CAMD, had represented to the college senate that there was overwhelming evidence that Gray stole the missing computer. *Id.* ¶ 59.  Goodale also told Gray that if he chose to resign in writing that day, Northeastern would not pursue him in criminal proceedings. *Id.* ¶ 60.  When Gray inquired about the evidence against him, he was advised to speak to an attorney and told that the University would push for his dismissal if he defended himself against the allegations in criminal court. *Id.* ¶ 62.

On October 1, 2015, Gray received a summons to appear at Roxbury District Court on a complaint for Receiving Stolen Property in an amount over $250. *Id.* ¶ 67. On December 1, 2015, Gray was arraigned in Roxbury District Court and entered a plea of not guilty. *Id.* ¶ 68.[5]  On December 14, 2015, Gray received a letter from Defendant James Bean ("Bean"), Provost and Senior Vice President of Academic Affairs at Northeastern, suspending Gray without pay for one year effective January 1, 2016. *Id.* ¶ 69, Ex. 3.  Two days later, on December 17, 2015, Gray received a letter from Dean Hudson informing him that his current appointment as an Assistant Professor would not be renewed. *Id.* ¶ 70, Ex. 4.

On October 4, 2016, Gray's jury trial commenced. *Id.* ¶ 71.  Several Northeastern employees testified at the trial, including Defendant Mark Nardone ("Nardone"), Director of Information and Security at Northeastern, and Defendant Christopher Franson ("Franson"), Technical Director for Art and Design at Northeastern. *Id.* ¶ 72.  Nardone

---

[5]       Gray does not allege that he was ever arrested or confined in connection with these proceedings.

testified, among other things, that Northeastern used a database called Munki to obtain the IP address used by the stolen computer on July 7, 2015 and July 27, 2015, which post-dated the theft of the laptop.  *Id.*  Franson testified that he was able to determine that the IP address in question was a Comcast address.  *Id.* ¶ 73.  Detective Coppa then testified that the Suffolk County District Attorney's Office served an administrative subpoena on Comcast, which identified Gray's residential address as belonging to the account.  *Id.* ¶ 74.

For the defense, a technology expert retained by Gray testified that the Munki system is easily subject to data manipulation by the administrator of the account.  *Id.* ¶ 76.  On October 6, 2016, Gray's jury returned a verdict of not guilty.  *Id.* ¶ 77.

## II.    <u>Argument</u>

### A.    **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Offering labels and conclusions will not suffice:  a complaint must allege more than bare assertions "devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.      Plaintiff's § 1983 Claim Based on Alleged Wrongful Termination (Count I) Fails Because the Conduct Complained of Did Not Transpire Under Color of State Law.**

In Count I of the Amended Complaint, Plaintiff alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment to receive notice and a fair hearing before Northeastern suspended him and decided not to renew his appointment.  Am. Compl. ¶¶ 80-89.  While Plaintiff does not specify to which Defendants this claim applies, Defendants assume that Count I is brought against Northeastern and those named corporate officers and school administrators at Northeastern who exercised authority over Plaintiff's suspension and the school's decision to not renew his appointment.  Because Northeastern and its corporate officers and school administrators are not state actors, Plaintiff's § 1983 claim fails.[6]

"Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State.'"  *Klunder v. Brown Univ.*, 778 F.3d 24, 30 (1st Cir. 2015) (quotation marks and citation omitted).  "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights

---

[6]      To the extent Plaintiff asserts Count I against Detectives Lynch and Coppa, that claim fails because Plaintiff does not plead that those defendants had any authority over the process by which Plaintiff was suspended and/or Northeastern decided not to renew his appointment.  Thus, they could not have denied Plaintiff of notice and a predetermination hearing.  In addition, other than reciting his name and title, the Amended Complaint does not contain a single allegation against Defendant Joseph E. Aoun, President of Northeastern University ("President Aoun").  For that additional reason, the Court should dismiss all claims against President Aoun.  *See Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 239 (S.D.N.Y. 1996) (dismissing claims against the Mayor of White Plains because the complaint did "not allege[] any facts stating a claim based on []his authority"); *Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014) ("[T]he tort theory of respondeat superior does not allow imposition of supervisory liability under § 1983.").

ensued." *Id.* (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011)).  Under

the first requirement, Plaintiff must allege that Defendants have acted under color of state

law, *i.e.*, that Defendants' "actions [are] 'fairly attributable to the State.'"  *Estades–*

*Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005) (quoting

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

"Northeastern . . . is a private not-for-profit university," *Bienkowski v.*

*Northeastern Univ.*, 285 F.3d 138, 139 (1st Cir. 2002), and the Amended Complaint

contains no allegation that Northeastern, or any of its employees, is anything other than a

private party.  "[A] private party can—in 'rare circumstances'—be deemed a state actor

for § 1983 purposes if one of three tests is met," namely (1) the state compulsion test, (2)

the nexus/joint action test, or (3) the public function test.  *Klunder*, 778 F.3d at 30

(quoting *Estades–Negroni*, 412 F.3d at 4-5).

Under the state compulsion test, "a private party is fairly characterized as a state

actor when the state 'has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the [challenged conduct] must in law be

deemed to be that of the State.'"  *Id.* (alteration in original) (quoting *Blum v. Yaretsky*,

457 U.S. 991, 1004 (1982)).  Under the nexus/joint action test, a private party may be

deemed a state actor "where an examination of the totality of the circumstances reveals

that the state has 'so far insinuated itself into a position of interdependence with the

[private party] that it was a joint participant in [the challenged activity].'"  *Id.* at 31

(alterations in original) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir.

1999)).  Under the public function test, "a private party is viewed as a state actor if the

plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'"  *Id.* (quoting *Blum*, 457 U.S. at 1005).

The Amended Complaint does not contain even a bare hint of an allegation that the state has exercised coercive power over, or has jointly participated in, Northeastern's decision to suspend Plaintiff's employment and to not renew his appointment as an Assistant Professor.  The state compulsion and nexus/joint action tests, therefore, cannot be met in this case.  *See Lu v. Smith*, No. CV 15-14081-DJC, 2016 WL 4595206, *2 (D. Mass. Sept. 2, 2016) (finding that plaintiff failed to allege how Boston University and a school police officer acted pursuant to any governmental influence or how the state functioned as a joint participant in the alleged conduct).  To the extent Plaintiff attempts to argue that Northeastern performs a public function, such an argument is squarely foreclosed by First Circuit precedent.  *See Klunder*, 778 F.3d at 32 ("Brown University is not performing a public function that has been 'traditionally the exclusive prerogative of the State,' . . . ."); *Berríos v. Inter Am. Univ.*, 535 F.2d 1330, 1333 (1st Cir. 1976) ("Higher education is not generally regarded as exclusively a function 'traditionally associated with sovereignty.'").  Thus, Plaintiff cannot rely upon the public function test to provide the foundation of a § 1983 claim.

In sum, this case does not present the "rare circumstances" in which private actors – here, Northeastern and its current and former corporate officers and administrators – may be deemed state actors.  *See Mead v. Indep. Ass'n*, 684 F.3d 226, 231-32 (1st Cir. 2012) (affirming dismissal of § 1983 claims for failing to plead that the Maine

9

Department of Health and Human Services "ordered [the plaintiff] terminated from her employment" with a non-governmental organization).  Accordingly, because the alleged conduct of Northeastern and its current and former corporate officers and administrators forming the basis for Count I did not constitute state action, Plaintiff has failed to plead a procedural due process claim under § 1983 based on his suspension and the University's decision to not renew his appointment.  Count I, therefore, should be dismissed.

### C.   Plaintiff's § 1983 Claim Based on Alleged Malicious Prosecution (Count II) Fails to State a Claim.

In Count II of the Amended Complaint, Plaintiff alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment based on a theory of malicious prosecution.  Am. Compl. ¶¶ 93-100.  This claim fails as pled against all Defendants, except for Detectives Lynch and Coppa, for the same reason that Count I fails—an absence of state action.[7]

Additionally, this claim fails as pled against all Defendants, *including* Detectives Lynch and Coppa, because such a procedural due process claim is not actionable "where, as here, the state's tort law recognizes a malicious prosecution cause of action."  *Davis v. Murphy*, No. 13-CV-11900-IT, 2018 WL 1524532, *8 (D. Mass. Mar. 28, 2018); *see Meehan v. Town of Plymouth*, 167 F.3d 85, 88 (1st Cir. 1999).  "A § 1983 claim for malicious prosecution as a deprivation of procedural due process is [thus] barred."  *Id.*[8]

---

[7]      Defendants incorporate into this subsection the arguments it makes above in Section II.B.

[8]      As recently explained in *Davis*, while § 1983 actions for malicious prosecution have been foreclosed under the Fourteenth Amendment, the First Circuit has recognized that a malicious prosecution claim may be cognizable under the Fourth Amendment.  *Id.* (quoting *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99-100 (1st Cir. 2013)).  Plaintiff does not and cannot allege a claim under the Fourth Amendment, which requires a defendant to cause "a seizure of the plaintiff pursuant to legal process

For these reasons, Plaintiff has failed to plead a procedural due process claim under § 1983 based on a malicious prosecution theory.  Count II, therefore, should be dismissed.

### D.    Plaintiff's § 1983 Claim Based on Alleged Reputational Harm (Count III) Fails to State a Claim.

In Count III of the Amended Complaint, Plaintiff alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment based on a theory of reputational harm.  Am. Compl. ¶¶ 104-08.  Like Counts I and II, this claim fails as pled against all Defendants, except for Detectives Lynch and Coppa, due to an absence of state action.[9]  Additionally, this claim fails as pled against all Defendants, *including* Detectives Lynch and Coppa, because a due process claim cannot be based on reputational harm and/or loss of employment with a private employer.

"The Supreme Court has made clear that a procedural due process claim cannot rest upon reputational harm alone."  *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011) (citing *Paul v. Davis*, 424 U.S. 693, 701–02 (1976)).  "Thus,

---

unsupported by probable cause."  *Hernandez-Cuevas*, 723 F.3d at 101.  No such seizure occurred here, and Plaintiff makes no allegation that he was subject to pretrial detention or had his liberty restrained in any manner in connection with the larceny prosecution in the Roxbury District Court.  *See Moreno-Medina v. Toledo*, 458 Fed. App'x 4, 7 (1st Cir. 2012) ("In a malicious prosecution case brought under Section 1983, 'the constitutional violation lies in the "deprivation of liberty accompanying the prosecution" rather than in the prosecution itself.'" (quoting *Britton v. Maloney*, 196 F.3d 24, 29 (1st Cir. 1999)); *Britton*, 196 F.3d at 28 ("[T]he Fourth Amendment does not speak of unreasonable 'prosecutions,' and instead refers only to unreasonable 'searches and seizures.'"); *Filler v. Hancock Cty.*, No. 1:15-CV-00048-JAW, 2016 WL 335858, *24 (D. Me. Jan. 27, 2016) ("Merely attending court proceedings [is] not sufficient. . . .  A plaintiff must allege that he was forced to yield to the assertion of authority over him and thereby [had] his liberty restrained." (internal quotation marks and citations omitted)).  The Amended Complaint is also bereft of any factual allegations suggesting that Detectives Lynch and Coppa acted with improper motive.  Accordingly, Plaintiff is foreclosed from bringing a malicious prosecution claim under the Fourth Amendment.

[9]       Defendants incorporate into this subsection the arguments it makes above in Section II.B.

when a person alleges that she has suffered stigmatization at the hands of a government actor, she must show an adverse effect on some interest more tangible than reputational harm." *Mead*, 684 F.3d at 233 (quoting *URI Student Senate*, 631 F.3d at 9). "That is, 'the reputational injury must be accompanied by a change in the injured person's status or rights under substantive state or federal law.'" *Id.* (quoting *Silva v. Worden*, 130 F.3d 26, 32 (1st Cir. 1997)). This standard is commonly referred to as the "stigma plus" standard. *Id.* "[H]arm to a right or status that does not emanate from substantive state or federal law" does <u>not</u> satisfy the "stigma-plus" standard. *URI Student Senate*, 631 F.3d at 10; *see Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998).

Both the "stigma" and the "plus" Plaintiff alleges in the Amended Complaint are clear. Plaintiff contends he was stigmatized by Defendants' alleged false statements concerning his theft of the stolen laptop, which caused him to lose his position at Northeastern (the claimed "plus"). *See* Am. Compl. ¶¶ 105-07. In the loss-of-job context, however, "the 'plus' cannot be the loss of [a] job with a private employer." *Mead*, 684 F.3d at 234. "[A] violation of constitutional proportions under a stigma plus theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of government action." *Id.* (quoting *Pendleton*, 156 F.3d at 63). Because Northeastern is a private employer (and nothing in the Amended Complaint suggests otherwise), Plaintiff's position as an Assistant Professor at Northeastern was not a government benefice. Plaintiff therefore has not suffered a change in status or rights under federal or state law that satisfies the "stigma-plus" standard.

Plaintiff has thus failed to plead a procedural due process claim under § 1983 based on reputational harm.  Count III, therefore, should be dismissed.

> **E.  Plaintiff's § 1983 Claim Based on an Alleged Conspiracy (Count IV) Fails to State a Claim.**

In Count IV, Plaintiff alleges that Defendants conspired to violate his constitutional rights.  "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."  *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

Plaintiff's conspiracy claim fails for two independent reasons.  First, as explained above in Sections II.B through D, Plaintiff cannot show that he suffered constitutional harm, which forecloses any conspiracy claim.  Second, Plaintiff does not sufficiently plead a conspiratorial agreement.  His threadbare and conclusory allegation about the existence of an "express or implied agreement" among disparate parties (Am. Compl. ¶ 113) is insufficient to support his claim.  *See Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (explaining that a court must "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"

For these reasons, Plaintiff has failed to plead a § 1983 claim based on conspiracy.  Count IV, therefore, should be dismissed.

> **F.  In the Absence of Any Federal Cause of Action, Plaintiff's Sole State Law Claim (Count V) Should Be Dismissed.**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the

dismissal without prejudice of any supplemental state-law claims." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995); *see Ruiz-Sulsona v. Univ. of Puerto Rico*, 334 F.3d 157, 160-61 (1st Cir. 2003) ("As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice."). That is because the "balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

This case is no exception. Nothing precludes Plaintiff from re-filing his breach of contract claim in state court, a forum that is competent to adjudicate such a claim. Accordingly, in the absence of a viable federal cause of action, this Court should dismiss Plaintiff's breach of contract claim (Count V).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion to Dismiss the First Amended Complaint and Jury Claim, and dismiss all claims against them.

Respectfully submitted,

DEFENDANTS NORTHEASTERN
UNIVERSITY, JOSEPH E. AOUN, JAMES
BEAN, RONALD STARR, GREGORY
GOODALE, SCOTT EDMISTON, BRUCE
RONKIN, FIONA GERMAINE,
CHRISTOPHER FRANSON, ELIZABETH
HUDSON, MARK NARDONE, WENDY
LYNCH, REGINA COPPA,

By their attorneys,


 /s/ Scott A. Roberts
Scott A. Roberts (BBO # 550732)
    *sroberts@hrwlawyers.com*
Michael C. Birch (BBO # 679976)
    *mbirch@hrwlawyers.com*
Michael J. Derderian (BBO # 682757)
    *mderderian@hrwlawyers.com*
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(T) (617) 348-4300/(F) (617) 348-4343

Dated: February 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I served a copy of this Memorandum
in Support of Defendants' Motion to Dismiss the First Amended Complaint and Jury
Claim on all counsel of record by filing the pleading through the Electronic Case Filing
(ECF) system and by first-class mail to those counsel not registered with ECF.

 /s/ Scott A. Roberts
Scott A. Roberts